Good morning, judges. Theodore Parker on behalf of the appellant. I'd like to reserve six minutes for rebuttal. In fact, after looking at the briefs and speaking to opposing counsel, this is probably one that could have been submitted on the briefs as well, but we, of course, enjoy the opportunity to speak to the court today. I'd like to first start out with what I believe to be the foundation of this appeal and its appellant's position that the respondent had notice of the bankruptcy filing as early as July 15, 2009. Everything stems from that filing. To put things in context, Mr. Miller filed his federal court action on April 6, 2009. He also filed his bankruptcy action in Galveston, Texas on April 6, 2009. Unfortunately, plaintiff's counsel in the federal district court case that we're here on today in Nevada was not aware of it. My firm was never made aware of it until the deposition of March 28, 2011. What is surprising to me, and I believe the reason why we brought this up in the motion for reconsideration, is that American Family feigned ignorance of the bankruptcy filing. Unlike my office, American Family received notice on July 15th, or perhaps July 17th. But wasn't that, though, it was an American Family affiliate, and wasn't it for, like, a trailer? It was a subsidiary. I mean, and this action is a completely different action that has to do with his relationship on, you know, the cancellation of premiums and all sorts of things along those lines. I would concede that, Judge Callahan. My position, however, is that the notice, if you take a look at the Schedule F bankruptcy notice, it identifies American Family insurance, not the subsidiary. And we put that as part of the excerpt, page 140. If you also look at the Certificate of Notice, the second document, which is excerpt page 150, it identifies American Family insurance, not the subsidiary. Additionally, the subsidiary, as well as American Family, are both located at the same place, 6000 American Parkway, Madison, Wisconsin. The general counsel for the subsidiary, as well as American Family, the same. And, in fact, if you look at the excerpt, page 110, the letter that I sent prior to initiating litigation in the district court in Nevada was sent to Mr. Holman, general counsel for both. Now, to see the... And so he's trying, I mean, you know, an argument that, you know, and obviously apparently the district court thought that he's trying to get all this money for himself and avoid that, and... Well, it's unclear, because if you take a look at the Ninth Circuit cases that we've cited with regards to the court's use of its inherent power to sanction, it all goes to the culpability of the person committing the conduct. If I may follow up on the judge's question. Of course. Isn't the real gravamen of the problem here, according to the district judge, the fact that your client in this litigation, in the district court, failed to disclose the bankruptcy matter? I would agree. Failed, okay, and failed to let the bankruptcy judge know, let the district court know that, in fact, the property involved in this suit was really under the control of the trustee. I would agree. I'm not going to argue that point, Judge Ripple. I can't really notice. It's really the fact that somebody was less than frank with the district court. Except that if you use that approach, Judge Ripple, that would be to ignore American family's notice of the bankruptcy itself, because what you're also saying by suggesting that my client had an obligation would also require the defendant, American family, to have notified the court as early as July 15, 2009, as well. I take it, then, that you look at the lack of notice as some kind of a defense. I look at it using, I believe it's a double-edged sword, Your Honor, because if you were to suggest that notice requires my client to inform both the district court in Nevada of the bankruptcy or, conversely, the bankruptcy court in Galveston, Texas, of the matter, then American family who received notice on July 17th had the same equal responsibility. But you don't even bring it up until the motion for reconsideration, right? Well, of course. But we also cited a Ninth Circuit case, as well as the Chambers case, as well as the Sixth Circuit case, the Petrosky case, that indicates that you can bring up fraud on the court at any time in the proceedings. It's not limited to a motion of reconsideration. It can be done on appeal. It can be done at any time in the proceedings, Your Honor. Well, those cases weren't precisely the same as this, were they? I thought they were analogous in terms of bringing up the issue and the timing of bringing up the issue. I would concede that, factually, there may be some differences. Well, if you ignore the fact, in our case, that what the person raised in the motion of reconsideration was a matter of remedy that the court had decided to give. It wasn't going to the merits. You folks didn't raise what you considered to be a merit consideration until the court ruled. It sounds like playing the same game that was being played before. No. It's unlike that. Because, unfortunately, plaintiff's counsel in the Nevada case had no knowledge of it. American families, general counsel and American family had notice of it, unlike the plaintiff's counsel in Nevada. They had notice for over two years. Now, I don't think it's luck or fortuitous that counsel for American family, during a deposition on an employment case, asks about a bankruptcy. I've been doing litigation for 20-some years. I've been in this court and doing appeals here, and I've done at least a dozen of them. I've never seen the question asked about a bankruptcy in a deposition having nothing to do with bankruptcy proceedings. That wasn't by luck. It wasn't by chance. They knew. They asked it when it was most convenient for them and most advantageous for their litigation position. And that's what they did. Do you want to read? You're down to less than three-and-a-half minutes. I'll reserve the rest for tonight. Okay. Thank you very much. Thank you. May it please the Court, Bruce Samuels, on behalf of the American Family Defendants. Good morning. The Respondent is here. Good morning. Thank you for hearing me this morning. To answer the Court's questions, this case really does deal with a motion for reconsideration, which the issues raised before this Court were not raised in response to our motion for summary judgment. And were therefore waived. The issues before this Court on the merits should also be rejected. Mr. Parker mentioned the bankruptcy notice that was issued to American Family Insurance. American Family Insurance is a trade name, a trademark. It's not a company. It's undisputed that none of the American Family parties to this litigation were ever scheduled in the bankruptcy court as creditors. It's undisputed that Mr. Miller obtained a discharge and nonetheless continued to pursue these claims for which he sought close to a million dollars for two years. And it's undisputed that in his deposition, it wasn't a direct question like Mr. Parker alluded to about a bankruptcy. Rather, the question was, after he left American Family, what did you do? Question. Answer. Didn't have any luck here in Las Vegas area, so we declared bankruptcy and moved to Texas. Well, that was the first these parties, American Family, had ever heard of this bankruptcy. Question. What type of bankruptcy? It was a Chapter 7. What was the result of the bankruptcy? It was discharged. American Family then quickly verified the petition had been filed and a discharge had been obtained. Voluntarily submitted a motion to dismiss its claims in respect of the discharge injunction without prejudice. Meanwhile, counsel for Mr. Miller continued to litigate the case in district court, filing a motion for reconsideration on behalf of his clients. Well, let's assume this is an affiliate and let you get past that. But just I want to hypothetically, I know this is not your position, but if, in fact, you had received notice at that time, what obligation would you have had to the court here, the district court here? Well, had American Family any of the... If you had notice of the, you know, the lawsuit. Well, I think it's fair to say that we would be subject to the automatic stay that was in place at the time of filing, as well as the discharge injunction. So we would have an obligation to no longer pursue our claims. It would certainly be, I think, best practices for the parties, either party to notify the district court upon learning of a bankruptcy filing so the district court doesn't waste its time and resources addressing a case that is improperly before it. The district court in this case was clearly agitated and upset with the fact that there had been 300-some filings in this case over two years, and only upon American Family's assertion that these claims should be dismissed did this issue come to the court's attention. The court found it deceptive, explicitly found these activities deceptive on Mr. Miller's part, and therefore awarded bad-faith litigation misconduct sanctions under the Chambers case. Let me ask you this. You also filed, you requested attorney's fees under Federal Rule of Appellate Procedure 38? Yes. Now, doesn't that rule require you to file a separate motion? It does require a separate motion, and it was not, it was embedded in the brief. So what's your position on that? We would still like to have sanctions awarded under Rule 38. You're talking attorney's fees. Attorney's fees, yes, and we would, our position was that by raising it in the papers, in our response brief, that that was sufficient. But if we're mistaken, then I apologize. Well, or would you file, would you file a separate motion under Rule 38? Yes, as long as it's not time barred, and I haven't researched that question. Okay. So with that, Your Honors, unless the courts have any, unless the judges on the panel have any more questions, I'll rest. Thank you. Thank you. I'd like to start where Mr. Samuels left off. Well, is that going to be on the attorney's fees? Because that's where I'd kind of like you to start. No, I think. Well, I want you to adjust that, and then I'll leave you the rest of your time. Oh, no problem. Since he didn't file a separate motion, you appear, though, to be contesting the attorney's fees just on the basis that you think that he's going to lose. But if he prevails, let's assume just for purposes right near, that if he prevails, should he get attorney's fees under Rule 38? I don't believe he should. Because? Well, I believe first procedurally he should have done it sooner. It should have been a request made at the district court to allow him to. Well, how can you request fees on appeal at the district court, though? These are for appeal. Well, Your Honor, we've already indicated in our brief why we believe he doesn't deserve it on appeal. My thought is that he didn't request it. He has not requested it. I don't believe that it would be appropriate, given that, again, all of it stems back, which we've put in our brief, of course. We believe that the interest, the ability to get fees are foreseeable, and it stems back to the December 10, 2008, termination. And so we believe under that series of cases, Galone and, I believe, Siegel, that he would not be entitled to it, Your Honor. All right. Now you can go to what you wanted to talk about. I'm sorry. No problem, Your Honor. Mr. Samuels indicated that Judge Mahan was frustrated, and he believed Mr. Miller to be deceptive. But under the cases we cited, the Lakewood case, the Primus case, the Lindblad case, it requires more than recklessness or negligence. It requires a culpable state of mind. If Mr. Samuels is correct, and Mr. Miller actually informed American family of the bankruptcy unprovoked, then certainly he was not culpable of trying to be deceptive. He was not culpable or deceptive, Your Honor. They can't have it both ways. If he said it unknowingly, without any trepidation, without any concern, then he could not have been culpable. But it's a very deferential standard to the district court. And I think the district court, you know, clearly believed that he was being deceptive and was, you know, the district court was taking the position that he was being sanctioned for post-bankruptcy actions. So why isn't the district court entitled to the proper deference that the standard requires? When I've seen sanctions like this levied, quite often the district court will ask for an evidentiary hearing to determine state of mind or determine whether or not this is a willful violation or misconduct. That wasn't done here, number one. Number two, the conduct was, if we believe what Mr. Samuels was saying, it was the action after filing the petition for bankruptcy. But during his deposition, he was forthcoming with the information. He didn't try to hide it. He wasn't trying to run away from what he had done. In fact, he said without a second question that he filed bankruptcy, Your Honor. There's no culpable state of mind here that was determined in accordance with the Lakewood 1992 Ninth Circuit case or the Lynn Blade Ninth Circuit 2003 case, Your Honor. So I don't think sanctions can be warranted given those cases. All right. Your time has expired. Thank you both for your argument. This matter will stand submitted.
judges: Ripple, Fernandez, Callahan